Merrimack
No. 2005-279

ALAN HANDLEY & a.

v.

PROVIDENCE MUTUAL FIRE INSURANCE COMPANY

Argued: February 8, 2006
Opinion Issued: April 7, 2006

*Backus, Meyer, Solomon & Branch*, of Manchester (*B.J. Branch* on the brief and orally), for the plaintiffs.

*Mulvey Professional Association*, of Portsmouth (*Lesley F. Cornell* on the brief and orally), for the defendant.

DUGGAN, J. The plaintiffs, Alan Handley (Handley) and his wife, Cynthia Handley, appeal an order of the Superior Court (*McGuire*, J.) granting summary judgment to the defendant, Providence Mutual Fire Insurance Company (Providence). We reverse and remand.

The following facts are undisputed. Handley, the owner of a home building and remodeling company, requires that his subcontractors demonstrate proof of insurance prior to hire. In September 2003, Handley asked subcontractor James Miles to provide a certificate of insurance before he would hire him to install sheetrock. Miles told Handley that he had insurance through Robert Olivier of the Olivier Insurance Agency. Olivier is an independent insurance agent and an authorized representative of Providence. On September 29, 2003, Olivier faxed a certificate of insurance to Handley. The certificate listed Handley's company as the certificate holder and indicated that Miles had general liability coverage through Providence from September 5, 2003, through September 6, 2004. Shortly thereafter, Miles began working for Handley.

At the time that he issued the certificate, Olivier knew that Miles was not insured by Providence. In fact, the check that Miles had provided to pay for his coverage had been returned for lack of sufficient funds in July 2003. Although Miles had promised Olivier that he would provide a valid check, he failed to do so before Olivier issued the certificate to Handley.

In mid-October 2003, a piece of sheetrock affixed by Miles fell and injured Handley. Handley contacted Olivier to request coverage under Miles' general liability policy. Olivier subsequently informed Handley's attorney that, because Miles' check never cleared, Miles had no general liability insurance through Providence.

Handley brought suit against Olivier and Providence for negligent misrepresentation and against Miles for negligence. Providence cross-claimed against Olivier for misrepresentation and moved for summary judgment on Handley's claim. The trial court granted Providence's summary judgment motion and concluded that, pursuant to *Bradley Real Estate Trust v. Plummer & Rowe Insurance Agency*, 136 N.H. 1 (1992), the certificate of insurance issued by Olivier "created no contractual relationship or duty on the part of Providence to inform Mr. Handley of any inaccuracies contained in the certificate of insurance issued on behalf of Mr. Miles, including whether coverage actually existed." The trial court later granted Handley's motion for voluntary nonsuit without prejudice as to his claims against Olivier and Miles. This appeal followed.

On appeal, Handley argues that the trial court erred in granting summary judgment to Providence. Specifically, Handley asserts that *Bradley* is distinguishable on its facts and, thus, does not dictate the outcome of this case. Handley also contends that genuine issues of material fact exist concerning whether Olivier made oral representations regarding Miles' coverage.

"In reviewing the trial court's initial grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party." *Broom v. Continental Cas. Co.*, 152 N.H. 749, 752 (2005). "If there is no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, the grant of summary judgment is proper." *Id.* "We review the trial court's application of the law to the facts *de novo*." *Id.* at 753.

The trial court concluded that *Bradley* controls this case. In *Bradley*, an insurance agent issued a certificate of insurance purporting to inform a third party that a contractor had purchased adequate workers' compensation insurance. *Bradley*, 136 N.H. at 2. The certificate contained three disclaimers, including one that stated that it was "issued as a matter of information only and confers no rights upon the certificate holder." *Id.* The policy was subsequently cancelled due to the contractor's failure to pay the premiums. *Id.* at 3. The third party argued that the certificate imposed a duty on the agency to notify it that coverage had been cancelled. *Id.* at 4. We held that the certificate contained "clear" disclaimers

indicating that it did no more than "certify that insurance existed on the day the certificate was issued." *Id.*

*Bradley* relied on *Broderick Investment v. Strand Nordstrom*, 794 P.2d 264 (Colo. Ct. App. 1990). In *Broderick*, a certificate of insurance accurately represented the insured's coverage on the day of its issue, but became inaccurate after the insured changed the terms of its coverage. *Broderick*, 794 P.2d at 266. The certificate in *Broderick* contained the same three disclaimers as in *Bradley*. *Id.* at 265-66; *Bradley*, 136 N.H. at 4. The *Broderick* court held that the certificate's disclaimers constituted "express limitations … as to the future accuracy of the information contained in that instrument." *Broderick*, 794 P.2d at 267. *Broderick* concluded that the certificate imposed no duty on the agent to inform the certificate holder of any material changes to the insurance coverage it described. *Id.*

Handley points out that the certificate in this case, unlike the certificates in *Bradley* and *Broderick*, lacks language indicating that it is issued for "information only" and "confers no rights upon the certificate holder." The certificate here contains three pertinent provisions.

The first:

> This Certificate does not amend, extend or alter the coverage afforded by the policies below.

The second:

> Coverages

> This is to certify that the policies of insurance listed below have been issued to the insured named above for the policy period indicated, notwithstanding any requirement, term or condition of any contract or other document with respect to which this certificate may be issued or may pertain, the insurance afforded by the policies described herein is subject to all the terms, exclusions and conditions of such policies, limits show [*sic*] may have been reduced by paid claims.

The third:

> Cancellation

> Should any of the above described policies be cancelled before the expiration thereof, the issuing company will endeavor to mail 10 days written notice to the certificate holder named to the left, but failure to mail such notice shall impose no obligation or liability of any kind upon the company, its agents or representatives.

■ Providence contends that neither *Bradley* nor *Broderick* depended solely on the "informational" language cited by Handley. Instead, Providence argues, the *Bradley* and *Broderick* courts considered the collective effect of the language of the certificates in those cases. Providence argues that the certificate in this case, when viewed in its entirety, also disclaims all obligations to the certificate holder. We agree with Providence that the certificate's provisions placed Handley on notice that the terms of coverage are controlled by the policy and that the agent and insurer have no duty to notify the certificate holder of cancellation or change to the policy. But, unlike the certificates in *Bradley* and *Broderick*, the certificate here does not clearly indicate that it is issued for "information only" or that it "confers no rights upon the certificate holder."

Moreover, the parties do not dispute that Olivier knew that Miles had no insurance through Providence when he faxed the certificate to Handley. Thus, unlike *Bradley*, the certificate in this case did not even accurately certify that coverage existed on the day it was issued. The *Broderick* court declined to impose a duty on the agent to notify a certificate holder of a policy's subsequent inaccuracies in part because it was "unable to conclude that [the agent] supplied any false information to [the certificate holder]." *Broderick*, 794 P.2d at 267. In this case, Olivier, Providence's authorized representative, admits that the certificate supplied false information to Handley.

For these reasons, we conclude that the trial court erred in concluding that *Bradley* compelled it to grant summary judgment to Providence. Because we reverse on this issue, we need not address Handley's other arguments.

*Reversed and remanded.*

BRODERICK, C.J., and DALIANIS, GALWAY and HICKS, JJ., concurred.